Your argument next in case number 2008-707, the Department of Veterans Affairs. Mr. Redden? Began when you were ready. May it please the Court, sir, we represent Melody Simpson, the appellant. We have two issues to be framed for the Court in our original brief and the Secretary has added a third, a jurisdictional issue. Our two issues are whether or not the Court below ordered in informing the BVA decision finding that Mrs. Simpson received a substantially accurate notice of the evidence necessary to prove her claim. The second issue was the Court below affirmed again the BVA's finding that there was an adverse medical evaluation that was obtained by the BVA prior to the adjudication of her claim. The Secretary contends that the Court lacks jurisdiction to review the decision of the Court below because there's a factual issue. If the Court is concerned about that, I will address it, but I know our second claim is based on constitutional issues that certainly allows the Court to consider facts. And my feeling is that the whether or not the Court below earlier in saying the Board told Mrs. Simpson that she had adequate notice of the equivalent of it because of a number of post-decisional documents that were stitched together and have been outlined in our principal brief and referred to in our reply brief in a number of instances. Simply put, this case involves the loss of a member of the United States military as a result of a cancer he developed many years after service. Mrs. Simpson's claim is that her husband's death was due to exposure to what is known as Agent Orange Dioxin. Mr. Simpson happened to be a Vietnam vet. He happened to be in the field where Agent Orange was used repeatedly as well as Agent Purple, and he's presumptively considered to have been exposed to that chemical, which has a range of toxic effects we're still assessing over the National Institute of Health unit we speak today. Mrs. Simpson's claim is based on the type of cancer that Mr. Simpson suffered from, esophageal cancer, one of the loosely classified groups of gastrointestinal cancers. It is not now currently on the presumptive service-connected list under the Agent Orange Act that the National Institute of Health is looking to prove the usual way you establish a VA claim, by showing honorable military service, incurrence of the symptoms or prodromal symptoms during service, current symptoms, and a medical opinion linking the two together. This case has been confused from the start by the confusion between presumptive service connection based on the list that's provided by the National Institute of Health and proving things the usual way you would for a VA case, which is, let's present your evidence. Now, Mrs. Simpson's case was initially filed before the VCA took effect in November of 2000, and it was re-landed because during the interim period her claim was under consideration, and the BVA kicked it back for re-adjudication. They began to issue a series of letters to the regional office level, each one in its own to the necessary requirements of the VCAA. Well, therein lies one of the issues, and I know you offered and we didn't take you up on it a few minutes ago, which is to discuss the jurisdictional question, because it's hard for me to discern how at least that particular allegation is one that does not involve the application of law to facts. Well, if I may, if I may point Judge Probst for a minute or two to what is in the record on that issue, what we have is a BVA decision. It ultimately is the fact-finding body here. The administrative agency determines whether the notice is proper, and it says, In the case now before the Board, documents strictly meeting the VCAA's notice requirements were not, nor could they have been, provided to the opponent prior to the August 2000 Rating Action on Appeal. The Board finds that in this appeal, the delay in issuing the 38 U.S. Code annotated Section 5103 notice was not prejudicial to the appellant, because it did not affect the essential fairness of the adjudication. That's what the Board found. It did not find, in so many words, this is at Record 6, that the regional office had in fact complied with the VCAA or any of the intermediate bodies. This case has gone up and down twice to the BVA and once to the Appeals Management Center. And the finding we have here in the last of the BVA decisions is not a finding. That is a single finding, as it was in the Prickett case, that there was adequate notice made. It says, well, adequate notice wasn't made. However, Mr. Simpson wasn't hurt by that. I think that's a question of law, because that gives an unfair prejudice. This is the court. Well, I understood, and maybe I'm confused, because there are several allegations here with respect to notice. One, it seems to me, there's some letters in early 2000, 2001, 2004, and they were saying the VCAA notice requirements were met. But then I thought they were talking there, and maybe I'm wrong, about sort of another allegation, which is she never got that particular medical report. And I thought it was with respect to that that they said, well, in effect, she had notice of the contents of that medical report and an opportunity to reply. So I thought that's what, am I wrong, I thought that's what they were referring to in terms of harmless error, because she had the notice. My reading of the decision, Your Honor, isn't quite limited to whether or not Mrs. Simpson should have had notice about the letter. Because I'm looking down at the board, rather than at the decision of the court below. My problem with the court's decision below is that it seems to have ventured off the true and pristine path of not making fines of fact on its own. And again, referring back to that. What's the legal issue then? I understand the constitutional question you raised with respect to due process. Putting that aside, what is the legal issue with respect to this adverse medical report or to the VCAA notification? I think it's very simply understood this way, Your Honor. If Mrs. Simpson had been told, in a way that she and the people of ordinary intelligence could understand, what she had to accomplish, the way that was described in Mayfield 2, she could then have sought competent medical opinion of her own. That doesn't sit right in the next item. You could understand that it does. Wait, wait, wait. What the Court of Appeals for Veterans Claims said was, okay, assuming arguendo, that she wasn't provided with a notice required by Mayfield, any such error was ultimately not prejudicial because Simpson had actual knowledge. And I understand Judge Post's question to be, the question of whether in fact she had actual knowledge or not, is a fact question beyond our jurisdiction. Why isn't that correct? Your Honor, it would be absolutely correct to say that the Court has no review over a fact finding, but this Court has said repeatedly that the Court below is not to engage in fact finding. And as I read the very quote that you put to me, Your Honor, it seems to me the Court below decided to find a fact, which it had no authority to do. That's why I referred initially to the Board of Veterans' Appeals decision, and that is the administrative agency that has the capability of taking testimony under oath and discerning the facts. The Court below was concerned about the accuracy of the record. Their job was to remand the Board of Veterans' Appeals with directions. The Judge below was concerned, this being a single-judge case, that Mrs. Simpson may or may not have had actual knowledge. The record that was before the Court at the time didn't establish that point. The proper decision was to remand. At that point, with directions from the Court below, the BVA could make a finding, yes or no. So the legal error here, according to you, is that the Board of Veterans' Appeals made a legal error by not remanding, by deciding on its own that there was actual notice. Your Honor, I agree. That was a significant error. And I think that is an error which this Court can review, because this Court historically has had that jurisdiction. It's the invention of the Court below. If the Court please, I'd like to pass briefly, if I may, to the second major issue we've raised, and that issue is the question of furnishing Mrs. Simpson a copy of an adverse medical examination. Now, the Court below didn't treat that claim as seriously as I do. And I'm disturbed by that. You see, if Mrs. Simpson had been proving a claim in the ordinary way without any interference from the Agent Orange presumptive list that's furnished by statute and by regulation, she would have to have some kind of adverse, excuse me, some type of favorable medical opinion establishing that her husband died from a cancer as likely as not caused by exposure to dioxin. The report that came out, and I'm sorry, but I have difficulty interpreting exactly what Dr. Maida said, and I included that report in the appendix because it seemed to me not to be terribly clear. Whether he was addressing the whole issue of presumptive service connection under Agent Orange, or he was addressing whether or not it was as likely as not Mrs. Simpson's husband died from a cancer that was triggered by Agent Orange. And it may be that I'm so steeped in this case that I can't get to the heart of it, but it seems to me the heart of this is that she was entitled to know that the VA had a negative report. Many years ago, the BVA did its own development. Regulations were established that allowed the BVA to go out, and this quote said... I thought she did know that they had a negative report. I'm sorry, Your Honor? I thought that she did know that they had a negative report. She just didn't get the report. What she received was a post-decisional statement of the case that said, a doctor had said, and I think I have to quote exactly from that because it seems to me to be a very difficult thing to get like unless you do it directly from a supplemental statement in the case it pertains. And directing ourselves to the appendix, I'm looking at the supplemental statement of the case as we found starting with page 33 and running all the way over to page 41. Now, this is the language that seems to refer to the opinion of Dr. Maynard, which is a full-page opinion. At the VA examination... What page are you reading? Appendix 41, Your Honor. 41? Okay. At the VA examination dated February 9, 2005, the examiner states that the Veterans Claims folder was reviewed. The examiner opines that it is not as likely as not that a service-connected disability was the cause of a veteran's death. The examiner does not feel that the presumed exposure to herbicides in Vietnam was the cause of the veteran's death. Okay, so she knew that the examination... Post-decisionally, she knew. Yes, Your Honor. This is, of course, a supplemental statement of the case saying we've already decided this and this decision is going back to the board. Right, and before the board, therefore, she had the opportunity to respond to this, as she did, correct? The letter from the nurse, Your Honor. My problem with that as a response is I don't think that addressed any of the issues Dr. Maynard raised other than the nurses... ...punished that it may have been a cancer... Well, you may be right about that, and that's presumably what the board decided, but the question is whose fault is that? Well, at this time, we're still in a uniquely proclaimed situation that this Court has addressed several times. We have not yet come to a full-blown adversarial hearing where people need to protect themselves at all times and you should be responsible for everything you do. At this time, the duty of the BBA by statute, the duty of the regional office in Pittsburgh by statute, is to assist this person in determining her claim. Okay, but she had notice that she could still provide evidence in response to that, right? Yes, Your Honor, she had the notice that we just quoted. Yeah, and she could have submitted evidence in response to it. But then she would need the copy of the report for any competent evidence to be submitted that would challenge it. The letter you referred to from the nurse, Your Honor, doesn't seem to address the issues the doctor made directly. I wouldn't say that a nurse is not qualified as an expert under VA regulations to give an opinion of some type. That's not my argument. But it doesn't seem to address the problem. The problem is not the fact that this particular condition is not on the list of the NIH. We know it's not, not yet. That could change. What the current medical opinion in flux could be is the opinion of another oncologist who especially happens to lie in the same areas the doctor made a saying, I differ. My view is it's likely it's not that the exposure to dioxin, a powerful toxin, could have triggered this cancer many years later. Such cases have been known to exist. This one never got there. Because I think, ultimately, the claimant was so confused by the various notices flying back and forth as to what she should do, that she was unable to interpret what would have been an appropriate response. I see that my time is up. Yes, we're getting short of time. Why don't we hear from Ms. Conlon and then we'll give you a little bit of time. Your Honor, may I please the Court? We respectfully request that this Court dismiss Ms. Simpson's case for lack of jurisdiction. You've continually asked my opposing counsel where the legal issue is, how this is not an application of law to fact, and he's been unable to respond to that question except to say that the legal issue is that the Veterans Court improperly made findings of fact concerning prejudicial error. We'd first like to point out that that issue was not raised until Ms. Simpson's reply brief, and therefore this Court should consider it waived. But if this Court would like to consider that issue pursuant to this Court's decision in Newhouse, the Veterans Court, by statute, is required to look at prejudicial error and to consider the entire record when determining whether or not there's prejudicial error. The Veterans Court is not bound by the Board's decision in terms of whether or not there was prejudice. The Court under 7261b2 is required to separately look at the full record and determine whether or not there's prejudicial error. So the fact that the Veterans Court made a prejudicial error finding that was different from the prejudicial error finding by the Board is not an error by the Veterans Court that this Court needs to review. Every other issue in this case is an issue of the application of law to fact. The issue of... Well, I guess she's claiming that she should have gotten, as a matter of law, she was entitled to receive the medical examination report and that she didn't. That's not law to fact, is it? Your Honor, that's prejudicial error determination. Her argument, as I understand it, is that she was prejudiced by not receiving a copy of the report. I took her argument to be, and this is tied up with the due process part of her claim, to be that she has an absolute right to an effective exam of the evidence against her. And that... That sounds like a legal claim on its face in any event. In any event, it's couched as a constitutional claim in which case the factual legal problem goes away, I take it. Right. The way I read it was both that it was a prejudicial error claim, which this Court has no jurisdiction over, and that she was attempting to make a constitutional due process claim that she did not receive due process by not receiving the medical report. There really is no constitutional claim here, however, first of all, because there is no protected property interest in application for veterans. You said there's no constitutional claim. You mean there's no valid constitutional claim. You're not denying that there is a constitutional claim sufficient to give us jurisdiction to address. You just think it should be denied, right? Well, I think it's tied up with the prejudicial error claim and that this Court does not have jurisdiction to address. But there may be a separate constitutional issue. Certainly, it's not a valid constitutional issue, and first of all, because there's no property interest. But this Court doesn't even need to reach that issue because even if there were a protected property interest in this application for benefits, it's clear that the due process requirements were fulfilled here. So why didn't she get the examination report? Don't you think it would be pretty easy to give it to her? Maybe, maybe not, but there's no requirement, at least under a constitutional argument. Now forget about the Constitution. Let's talk APA. Let's talk about procedures before the VA. I mean, don't you think that if there's evidence that the VA is relying on to rule against her, that normally you'd expect her to receive the evidence? Again, there's no requirement under VA procedures that she receive the evidence. I'm sorry. Please finish. The requirement is that she have some opportunity to respond to any evidence that there is, and the medical report was described in detail as Ms. Simpson's counsel read from the Joint Appendix. It was described in detail in the supplemental statement of the case, and Ms. Simpson was given an opportunity,  in the supplemental statement of the case. She could have requested a copy of the report if she wanted additional information that was not described in the supplemental statement of the case. So what would happen if she requested it? That's not going to be my question. I presume there would be no problem with her receiving it. But it's clear that there was no request made in this case? Yes. And do you know if there... We get, typically in these cases, we find the medical evidence reports from internal and external, if my memory serves me, and I think it does, all the time in the Joint Appendix. So I assume that there has been more or less a practice of the VA providing these things to people upon request. Do you know if that's a general practice? I'm not sure, Your Honor, but I certainly don't think it would be a problem if a medical report was requested. Certainly one that was clearly considered by the RO in making the decision. I don't see how Ms. Simpson would not be able to get a copy of that report if requested. And we'd probably reverse if such a request were denied, wouldn't we? Perhaps. But the fact is here that she did not request the report, but she knew of the report, perhaps not on the day that the report was issued, but she was notified of the report in the supplemental statement of the case and was given an opportunity to respond. That is the only requirement in terms of a constitutional due process requirement. Any additional requirements are not an issue here because those would be applications of law-to-fact in this case, which this Court cannot consider. All this Court could consider is the constitutional issue of whether her due process rights were violated. Any other type of prejudice would not be something this Court could consider. Very well. Thank you. Mr. Wink, we'll give you two minutes if you need it. Your Honor, one thing's emerged from the... Before you get into your argument, just to make sure the decks are clear here, no request was made for the report, I take it? No request was made, to my knowledge, for that report. We can safely say that that can be assumed. Could I just ask you about the appendix? You referred to this earlier. So I'm looking at 33, which is the letter sent to Mrs. Simpson, and then the attachment is what was attached to that, including at page 41 the summary or whatever we want to call it of the examination, right? That is correct. This is the standard VA document called Supplemental Statement of the Case, which the VA is required by statute to lay out the steps taken to adjudicate the case. Okay, so then on page 34 of the appendix where it says evidence, and it says under bullet point 2, VA medical examination and opinion dated February 9, 2005, that doesn't mean that that's included or attached, does it? No, it doesn't, Your Honor. It simply says this is what we reviewed. Now, I do see no reason why the Department could not have attached the negative report to this Supplemental Statement of the Case. I know it's not policy, and I don't think it's ever been done. This is a case that didn't turn out... You mean they don't do it routinely? As far as I know, Your Honor, it's not done routinely. We see those things all the time. Now, I don't know whether that's how they find their way into the record, but I would assume that somebody makes a request. Well, in this particular case, I know exactly how we got this. We came into this case late in the game and requested all permanent records from the Department. You did get a copy of the report? Yes, we did, Your Honor. At the time, we were facing the court below. Not during the time that these occurred. We didn't represent Mrs. Simpson at the time. She had a county veteran service officer in a little northwest Pennsylvania county helping her. She was largely unarmed. But I realize the status of the court has to take into consideration not only the fairness to the party, but the practical application of a standard of fairness like this. And it doesn't seem to me to be at least a bit difficult for the VA to have submitted that report with a Statement of the Case. And I wouldn't be here if that were the case. If there's anything further, I'd be glad to answer any questions. You asked and they sent it? That's correct, Your Honor. No hoops? Thank you. The case is submitted.